IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| NOLVIN ISMAEL HERRERA, | ) | CASE NO. 4:26-cv-00125-JRK |
| | ) | |
| Petitioner, | ) | DISTRICT JUDGE JAMES R. KNEPP II |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| SECRETARY OF THE U.S. DEPARTMENT | ) | |
| OF HOMELAND SECURITY, ET AL., | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Respondents.[1] | ) | |

## I.    Introduction and Procedural History

On January 16, 2026, Petitioner Nolvin Ismael Herrera ("Herrera") filed an application for a writ of habeas corpus under 28 U.S.C. § 2241. (ECF Doc. 1). On January 21, 2026, the matter was referred to me for a report and recommended decision. (ECF Doc. 4).

Under 28 U.S.C. § 2243, on January 21, 2026, I ordered Respondents to provide their written response to the Petition (ECF Doc. 3), which they[2] did on January 29, 2026 (ECF Doc. 9). I then held a telephone status conference on February 5, 2026, to permit the parties to present argument regarding Petitioner's status at the time of his detention and whether 8 U.S.C. §§ 1225(b)(2)(A) or 1226(a) properly apply to him. (Non-document entry of Feb. 5, 2026). I permitted the parties to supplement their briefing, which they did on February 10, 2026. (ECF Docs. 10, 11). After review, I found Respondents' submission deficient and ordered they

---

[1] In their brief, Respondents state in a footnote that DHS Secretary Noem and Attorney General Bondi are not proper respondents here, because only the Field Office Director for ICE may issue a writ of habeas corpus. (ECF Doc. 9, p. 8 n.1). Finding that the Detroit Field Office Director Kevin Raycraft is named as a Respondent and may therefore issue the writ as to Herrera, I proceed.

[2] Respondents Wardens Ed Voorhies and Mike Meintel did not make an appearance or otherwise respond.

supplement with documentation to support on what authority petitioner is being held. (Non-document entry of Feb. 12, 2026). Respondents supplemented their response that same day by reaffirming the previously submitted documents and by reasserting out-of-circuit authority for their position that Petitioner's detention is lawful under 8 U.S.C. § 1225. (ECF Doc. 12). Petitioner has moved for sanctions and asks that the Court, strike, make an adverse inference, or permit cross-examination of the witness, regarding that submission. (ECF Doc. 13).

## II.     Factual Background[3]

Herrera is a citizen of Nicaragua. (ECF Doc. 1, Pet., ¶ 25). He was a political protester and fled Nicaragua's Ortega regime and lived in Costa Rica with his family for a time. (*Id.*). He was attacked in Costa Rica based on anti-Nicaraguan sentiment, and fled that country as well. (*Id.*). He entered the United States on June 11, 2022, by crossing at the southern border. (*Id.*, ¶ 26). He did not enter with inspection at that time. (*Id.*). On June 12, 2022, he presented to immigration authorities and was inspected by Customs and Border Patrol ("CBP") officials at the Del Rio, Texas port of entry; he claimed asylum and was granted parole into the United States. (*Id.*, ¶¶ 26-27; ECF Doc. 1-4). At that time, ICE gave Herrera a phone for reporting purposes. (ECF Doc. 13-2, Herrera Aff., ¶ 1).

He was placed in removal proceedings on August 31, 2022, and given a notice to appear ("NTA") in Cleveland immigration court for November 28, 2023. (ECF Doc. 1, Pet., ¶ 28; *see*

---

[3] At this stage of proceedings, allegations in the Petition are accepted as true and construed in Petitioner's favor. *See Alexander v. N. Bureau of Prisons*, 419 F. App'x 544, 545-46 (6th Cir. 2011) (describing the pleadings standard and applying to the § 2243 stage in a § 2241 petition). In addition, "documents attached to the pleadings become part of the pleadings and may be considered" without converting to summary judgment. *Id.*, quoting *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007).

*also* ECF Doc. 9-1). Herrera's wife and two minor children were inspected and paroled into the United States on November 10, 2022; the family has been living in Cleveland since. (*Id.*, ¶ 29).

Upon reporting to the Brooklyn Heights, Ohio ICE office, Herrera was required to use the SmartLink app for his required check-ins. (ECF Doc. 13-2, Herrera Aff., ¶ 2). He was required to report every Friday by taking a photo in the app, and never missed a check-in. (*Id.*, ¶¶ 3-4). In addition to the Friday app check-ins, Herrera was required to attend appointments every three or four months, either by phone or in person at the ICE office. (*Id.*, ¶¶ 3, 5). The app had a calendar notification system informing him of upcoming appointments and whether they would be by phone or in-person. (*Id.*, ¶ 5). If the appointment was in person, the ICE agent would generally sign Herrera's I-220 form to confirm attendance. (*Id.*).

Herrera timely applied for asylum on June 2, 2023. (ECF Doc. 1, Pet., ¶ 1). He was granted work authorization on January 23, 2024, which remains current until January 22, 2029. (ECF Doc. 1-5). Herrera asserts he has been compliant with all immigration requirements and has attended all scheduled appointments.[4] (ECF Docs. 1, ¶¶ 30, 32; *see also* ECF Doc. 13-2).

Herrera was detained on December 15, 2025, when he attended a scheduled immigration appointment. (ECF Doc. 1, ¶ 30). He had been notified via the SmartLink app that his December 15, 2025 appointment had been changed from phone to in-person; when he arrived, he was accused of missing court and informed that there was an order for his arrest. (ECF Doc. 13-2, ¶¶ 6-7). He was then arrested, and his phone and paperwork were confiscated. (*Id.*).

---

[4] Respondents assert, by way of an unsworn declaration, that Herrera missed his scheduled appointments despite receiving reminders from the Agency. (ECF Docs. 11-3, 12-1). Despite multiple orders from this Court to support these unsworn statements, Respondents provide no further detail as to the date of the appointments, any reminders that were sent, or any supporting documentation to give reason for Herrera's arrest and detention. (*Compare id. with* ECF Doc. 6, non-document entries of Feb. 5, and 12, 2026). Herrera provides an affidavit, stating he has not missed any appointments, nor did he fail to read any messages sent to him. (ECF Doc. 13-2). I address this point later.

Herrera's counsel requested a bond hearing on December 16, 2025, but bond was denied on January 22, 2026 because the immigration judge ("IJ") determined they were without jurisdiction to grant bond. (*Id.*, ¶ 31; *see also* ECF Doc. 10, pp. 4-6). Herrera asserts that the IJ found in the alternative that he was eligible for bond because he did not present a danger or a flight risk. (ECF Doc. 10, p. 5).

Herrera now petitions this Court for habeas corpus relief, asserting that he is being detained unlawfully in contravention to his statutory rights under the Immigration and Nationality Act ("INA"), and against his due process rights under the U.S. Constitution. (ECF Doc. 1, ¶¶ 50-59). He requests that this Court assume jurisdiction over his habeas proceedings, issue a writ for his immediate release, and award attorney's fees and costs as provided in the Equal Access to Justice Act ("EAJA") 28 U.S.C. § 2412. (ECF Doc. 1, pp. 13-14).

## III.    Legal Standard

The Constitution guarantees that, absent suspension, the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004), citing U.S. Const.., Art. I, § 9, cl. 2. Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. The writ is established to ensure that the government "does not detain individuals except in accordance with law" and permits all persons to challenge the lawfulness of their confinement, regardless of status. *Hamdi*, 542 U.S. at 525.

### A.    Section 2241 Proceedings

Federal district courts are limited in their relief under Section 2241 when considering immigration cases. *See, e.g.*, *Elgharib v. Napolitano*, 600 F.3d 597, 607 (6th Cir. 2010) (finding a

4

district court lacks jurisdiction to consider removal orders); *see also* 8 U.S.C. § 1252(g) (giving the Attorney General of the United States exclusive jurisdiction over removal proceedings). This Court may not grant habeas relief as to the underlying immigration question, *i.e.*, a removal question. *Hamama v. Adducci*, 912 F.3d 869, 876 (6th Cir. 2018) ("Congress stripped the courts of jurisdiction to grant habeas relief in § 1252(g)" for challenges regarding the legality of removal orders). However, the district court may review whether an alien is lawfully detained; the Attorney General's immigration authority[5] does not abrogate Section 2241's authority to grant the writ within these bounds. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020) (describing habeas corpus as the appropriate remedy to determine the legality of a person's custody).

To that end, this Court may still interpret immigration statutes applied against a petitioner to discern whether the detention is lawful or not. *See id.*; *see also* 8 U.S.C. § 1252(e)(5) (stating that a court's inquiry is limited to determine whether an order under § 1225(b)(1) was issued and whether it relates to a petitioner). Congress has further limited habeas review for certain classes of immigrants, namely, aliens under 8 U.S.C. 1225(b)(1) who are "arriving in the United States and . . . who have not been admitted or paroled." For those aliens, § 1252(e)(2) allows habeas review of three matters: (1) "whether the petitioner is an alien"; (2) "whether the petitioner was ordered removed"; and (3) whether the petitioner can prove that they have been granted entry as a lawful permanent resident, refugee, or asylee. 8 U.S.C. §§ 1252(e)(2)(A)-(C).

---

[5] Although authority is statutorily vested in the Attorney General, immigration enforcement, and administration functions were transferred to the Secretary of Homeland Security by the Homeland Security Act of 2002. Pub. L. No. 107-296, 116 Stat. 2135 (2002). However, the Attorney General's discretionary detention authority under § 1226(a), delegated to immigration judges, "is shared with [DHS] because officials of that department make the initial determination whether an alien will remain in custody during removal proceedings." *Matter of D-J-*, 23 I. & N. Dec. 572, 574 n.3 (A.G. 2003).

In no instance may this Court determine whether an alien is in fact inadmissible or otherwise entitled to relief from removal. *E.g.*, *id.* § 1252(e)(5).

**B.     Interpretation of Immigration and Nationality Act Sections 1225(b) and 1226(a)**

To begin with general provisions of immigration law, an "alien who arrives at a 'port of entry,' *i.e.*, a place where an alien may lawfully enter, must apply for admission." *Thuraissigiam*, 591 U.S. at 108. Aliens who are detained trying to enter elsewhere are treated similarly. *Id.*, citing 8 U.S.C. §§ 1225(a)(1), (3). Yet "several classes of aliens are 'inadmissible' and therefore 'removable.'" *Id.* at 107-08 (2020), quoting 8 U.S.C. §§ 1182, 1229a(e)(2)(A). Among these are aliens who lack valid documentation "at the time of application for admission." 8 U.S.C. § 1182(a)(7)(A)(i)(I).

The removal process provides for an evidentiary hearing before an immigration judge, where the alien may challenge their removal, including applying for asylum. *Thuraissigiam*, 591 U.S. at 108 (internal citations omitted). Should their claim be rejected, the alien may appeal the removal order to the Board of Immigration Appeals ("BIA"), and may also have a right to review in a federal court of appeals. *Id.* While their removal proceedings are being litigated, the alien will generally be detained. *Id.* However, the classification of the alien determines whether that detention is mandatory or discretionary. *Compare* 8 U.S.C. §§ 1225(b)(2)(A) *with* 1226(a).

Thus, relevant to the present inquiry are 8 U.S.C. §§ 1225(b) and 1226(a), both of which govern detention of noncitizens pending removal proceedings. Section 1225 governs the expedited removal process and requires mandatory detention under its provisions, while § 1226 permits discretionary release from detention for certain aliens.

6

### 1.    8 U.S.C. Section 1225(b)

Section 1225 controls the Government's determination of the admissibility of aliens seeking to enter the country, which "generally begins at the Nation's borders and ports of entry." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). This section provides for inspection by immigration officers, and expedited removal of, certain arriving aliens, *i.e.,* "applicants for admission" who are "present in the United States who ha[ve] not been admitted or who arrive[] in the United States." 8 U.S.C. §§ 1225(a)(1), (3).

During inspection, an immigration officer may determine an alien to be inadmissible and order they be removed without further hearing or review. *Id.* § 1225(b)(1)(A)(i). An applicant for admission is subject to expedited removal if they (1) are inadmissible for lack of a valid entry document; (2) have not been physically present in the United States continuously for two years before the determination of inadmissibility;[6] and (3) are among those designated for expedited removal. *Thuraissigiam*, 591 U.S. at 109, citing 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii)(I)-(II). In certain circumstances, an applicant can avoid expedited removal by claiming asylum. *Id.* at 108-09; *see also* 8 U.S.C. §§ 1225(b)(1)(A)(ii), 1225(b)(1)(B).

In addition to expedited removal proceedings, Section 1225 carries with it certain mandatory detention clauses. 8 U.S.C. §§ 1225(b)(1)(B); (b)(2)(A). One section governs the asylum officers during their interview of aliens seeking asylum, and states that any applicant for admission who claims asylum "shall be detained" for further consideration of the asylum claim, or until determination of a credible fear of persecution, or "until removed," as applicable. 8 U.S.C. §§ 1225(b)(1)(B)(ii); (iii)(IV).

---

[6] This section describes the aliens subject to its provisions as "an alien . . . who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." 8 U.S.C. § 1225(b)(1)(A)(iii)(II).

The second states that, for other aliens who are applicants for admission, "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" for removal proceedings under section 1229a, unless an exception applies. 8 U.S.C. § 1225(b)(2)(A). It is this portion of the statute that is at issue in the months since implementing new DHS policy on January 24, 2025, and since the BIA's decision in *Matter of Yajure Hurtado*, discussed *infra.*

### 2.    8 U.S.C. Section 1226(a)

Section 1226 generally governs the process of arresting and detaining aliens once inside the United States. *Jennings*, 583 U.S. at 288. Under § 1226(a)'s "default rule," the Attorney General may issue a warrant for an alien's arrest, and provide for the alien's detention pending a removal decision. *Id.*, citing 8 U.S.C. § 1226(a). Section 1226(a) outlines a framework for detention: The Attorney General "may continue to detain the arrested alien"; "may release the alien on bond of at least $1,500" or "may release the alien on conditional parole." 8 U.S.C. § 1226(a)(1)-(2). Release, however, does not permit work authorization. *Id.* § 1226(a)(3).

The arresting immigration officer makes the initial detention determination. 8 C.F.R. §§ 1236.1(c)(8), (d)(1). Aliens may appeal that determination in a bond hearing before an immigration judge. *Id.* And, under Section 1226(a)'s discretionary framework, the Attorney General may revoke bond or parole, and may rearrest and detain the alien "under the original warrant." 8 U.S.C. § 1226(b).

Congress amended Section 1226 to add mandatory detention for certain criminal aliens, as codified in Section 1226(c) through the Laken Riley Act. Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025). This section "carves out a statutory category of aliens who may not be released under § 1226(a)." *Jennings*, 583 U.S. at 289. The Attorney General must detain an alien who is (1)

8

inadmissible because they are in the United States without being admitted or paroled, obtained documents or admission through misrepresentation or fraud, or lacks valid documentation; and (2) "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 8 U.S.C. §§ 1226(c)(1)(E)(i)-(ii).

In short, as the Court stated in *Jennings*, "U.S. immigration law authorizes the Government to detain certain aliens seeking admission *into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under § 1226(a)[.]" 583 U.S. at 289 (emphasis added).

### C.      Changing DHS policy and *Matter of Yajure Hurtado*

As above, Section 1225 controls border inspection processes and the expedited removal of "arriving aliens." "Expedited removal proceedings do not include the right to appeal to an IJ, the BIA [Board of Immigration Appeals], or (aside from two narrow exceptions) a judicial court." *E.V. v. Raycraft*, No. 4:25-CV-2069, 2025 WL 2938594, at *2 (N.D. Ohio Oct. 16, 2025); *see also, e.g.*, 8 U.S.C. §§ 1225(b)(1), (c); 1252(a)(2)(A), (e). "Noncitizens are eligible for expedited removal if they are: (1) 'arriving in the United States,' that is, appearing at a port of entry; or (2) have 'not been admitted or paroled into the United States' and they cannot affirmatively show that they have been 'physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility.'" *E.V.*, 2025 WL 2938594, at * 2, quoting 8 U.S.C. § 1225(b)(1). The DHS Secretary, as delegated by the Attorney General, has the authority to designate the population of noncitizens within the

second category who are subject to expedited removal. *Id.*, citing 8 U.S.C. § 1225(b)(1)(A)(iii)(I).

Until January 2025, DHS had designated two classes in addition to "arriving aliens" as subject to expedited removal: (1) aliens arriving by sea within the last two years, and (2) aliens apprehended within 100 miles of an international border and within 14 days of entry. *Id.*, citing to *Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the Immigration and Nationality Act*, 67 Fed. Reg 68924, 68924 (Nov. 13, 2002) *and Designating Aliens for Expedited Removal*, 69 Fed. Reg. 48877-01, 48877 (Aug. 11, 2004).

In January 2025, DHS implemented a new policy, now applying expedited removal proceedings to aliens "who are encountered anywhere in the United States more than 100 air miles from a U.S. international land border, and who have been continuously present in the United States for at least 14 days but less than two years." *Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139-01 (Jan. 24, 2025). Under this policy, DHS argues that all such aliens are "arriving aliens" and subject to expedited removal.[7] *E.V.*, 2025 WL 2938594, *2.

Then on September 5, 2025, the BIA issued an interim decision in the *Matter of Yajure Hurtado*, determining that aliens seeking admission are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and immigration judges lack jurisdiction to make bond determinations under this statute. *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).

On November 20, 2025, a federal district court in California found that DHS's policy of applying 8 U.S.C. § 1225(b)(2)(A) against all classes of immigrants and denying bond proceedings as described in *Matter of Yajure Hurtado* was arbitrary and capricious, and vacated

---

[7] It appears that this policy has been applied more broadly in practice; in an earlier case before this Court, DHS has argued that a person who had been continuously present in the United States since 2001 was also an "arriving alien" and subject to § 1225(b)'s mandatory detention and expedited removal proceedings. *E.g.*, *Chavez v. Dir. of Detroit Field Off.*, No. 4:25-CV-2061, 2025 WL 3187080, at *1 (N.D. Ohio Nov. 14, 2025).

10

that policy. *Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3713987, at *15-21

(C.D. Cal. Dec. 18, 2025), *judgment entered sub nom. Maldonado Bautista v. Noem*, No. 5:25-

CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). In addition to vacating the

policy under the APA and rendering it a nullity, that court also certified a nationwide Bond

Eligible class. *Bautista*, 2025 WL 3713987, at *32. The Bond Eligible Class includes:

> All noncitizens in the United States without lawful status who (1) have entered or
> will enter the United States without inspection; (2) were not or will not be
> apprehended upon arrival; and (3) are not or will not be subject to detention under
> 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland
> Security makes an initial custody determination.[8]

*Id.*

## IV.    Discussion

With these foundational principles described, I turn to Herrera's federal habeas corpus

petition.

### A.    This Court has jurisdiction over habeas corpus petitions, including Herrera's.

I first address Respondents' argument that this Court is without jurisdiction to determine

Herrera's habeas corpus petition. (ECF Doc. 9, pp. 9-13).

As their first point on the matter, Respondents argue that 8 U.S.C. § 1252(g) bars

jurisdiction over claims "'arising from'" the Secretary of Homeland Security's decision to

"'commence proceedings, adjudicate cases, or execute removal orders against any alien.'" (*Id.* at

p. 9, quoting 8 U.S.C. § 1252(g) (emphasis omitted)). Respondents state that judicial review of

Herrera's claim is unavailable because this Court is without authority to review any claim that

---

[8] Herrera asserts that he is eligible for release on bond as both a member of the Bond Eligible Class designated in *Bautista* and also because that court vacated the DHS policy as not in accordance with law. (ECF Doc. 1, ¶ 45). However, as discussed in more detail *infra*, Herrera is entitled to relief on the merits of his own petition and I make such recommendation without finding it necessary to consider whether he is a member of the *Bautista* Bond Eligible Class.

might be related to his underlying removal proceedings. (*Id.*). In support, they cite several cases from outside the Sixth Circuit, which are not binding on this Court. (*Id.*, citing, *e.g.*, *Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016); *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 298 (3d Cir. 2020); *Valencia-Mejia v. United States*, No. CV 08–2943 CAS (PJWx), 2008 WL 4286979, at *4 (C.D. Cal. Sept. 15, 2008)).

Respondents' expansive reading of Section 1252 to bar federal courts of jurisdiction to consider habeas petitions is inapplicable in the Sixth Circuit, and cuts against Supreme Court precedent. *See Rosales-Garcia v. Holland*, 322 F.3d 386, 394 (6th Cir. 2003) (describing that IIRIRA did not bar the district courts of jurisdiction to consider habeas petitions); *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (same). As addressed above, federal district courts may consider a federal habeas petition under 28 U.S.C. § 2241 without disturbing the petitioner's underlying immigration case or the Secretary's executable removal orders. This Court does not have jurisdiction over the petitioner's underlying immigration case and it cannot decide whether to detain under an immigration statute. *See, e.g.*, *Hamama*, 912 F.3d at 876 *and Hamama v. Adducci*, 946 F.3d 875, 877 (6th Cir. 2020) ("*Hamama II*"). The Sixth Circuit has stated that 1252(g)'s jurisdictional bar prevents a district court from enjoining or restraining the operation of one of the covered statutes, even in the habeas context. *Hamama II*, 946 F.3d at 877.

But 1252(g) does not prevent a district court's review of the lawfulness of the alien's detention itself. As applied in the Sixth Circuit, the jurisdictional bar in § 1252(g) does not abrogate § 2241's authority to grant the writ where the immigrant's detention was unlawful. *See, e.g.*, *Enriquez-Perdomo v. Newman*, 54 F.4th 855, 863 (6th Cir. 2022); *see also Thuraissigiam*, 591 U.S. at 117. With respect to removal orders, federal district courts have no jurisdiction to consider the decision to "execute removal orders." 8 U.S.C. 1252(g). But the Sixth Circuit

12

interprets 1252(g) "as referring to *executable* removal orders—that is, existing and enforceable removal orders subject to execution." *Enriquez-Perdomo*, 54 F.4th at 863. When an alien otherwise may lawfully be in the United States, the removal order is not subject to execution, and a federal district court is not barred by 1252(g). *Id.* The Sixth Circuit did not limit this reading only to enforceable removal orders and stated that principles of statutory construction favor judicial review of administrative action even in immigration cases, because the statutory scheme as a whole supports the availability of limited habeas review. *Id.* at 863 n.6.

Further supporting the Sixth Circuit's interpretation of Section 1252 is Respondents' next argument. Respondents argue that 8 U.S.C. § 1252(b)(9) and § 1252(a)(5) also bar this Court's review of Herrera's claims. (ECF Doc. 9, pp. 9-11). Applying simple principles of statutory interpretation leads to the conclusion that Section 1252(g)'s exclusive jurisdiction provision would render superfluous the other provisions limiting this Court's review. *E.g.*, 8 U.S.C. §§ 1252(a)(5); (b)(9); (e). A too-expansive reading of § 1252(g) to bar all federal district court review of any claim that arises from immigration actions would swallow other provisions of that act that also place limits on a federal court's review. *Enriquez-Perdomo*, 54 F.4th at 863 n.6; *see also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999).

First, Section 1252(b)(9). Respondents state that because Herrera is challenging the basis on which he is detained, Section 1252(b)(9) requires he raise his claims before the Sixth Circuit, not before this Court. (ECF Doc. 9, pp. 9-11).

But Section 1252(b)(9)'s "zipper clause" does not apply to bar the district court's jurisdiction over Herrera's claims. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") authorizes noncitizens to obtain direct "review of a final order of removal" in a court of appeals. 8 U.S.C. § 1252(a)(1). In this context, a "final order of removal"

is a "final order 'concluding that the alien is deportable or ordering deportation.'" *Nasrallah v. Barr*, 590 U.S. 573, 579 (2020), quoting 8 U.S.C. § 1101(a)(47)(A). The relevant subsection here states that judicial review of all questions of law and fact "arising from any action taken or proceeding brought to remove an alien from the United States" is not available in federal habeas review. 8 U.S.C. § 1252(b)(9). Section 1252(a)(5) provides that a petition for review must be filed with the appropriate court of appeals as the "sole and exclusive means for judicial review of an order of removal."

The IIRIRA provides for expedited judicial review of final orders of removal by "consolidating" the alien's "various challenges arising from the removal proceedings" in a petition for review by the courts of appeals and "eliminating review in the district courts." *Nasrallah*, 590 U.S. at 580 (internal quotations and marks omitted). Thus the "rulings that affect the validity of the final order of removal merge into the final order of removal for purposes of judicial review" under Section 1252(b)(9)'s direct review consolidation provisions. *Nasrallah*, 590 U.S. at 982. Orders that do not affect the validity of the final order of removal do not merge into the final order of removal and are therefore not subject to 1252(b)(9)'s limitations. *Nasrallah*, 590 U.S. at 982 (applying to Convention Against Torture orders).

To support their position, Respondents again highlight the circuit split present in the interpretation of Section 1252's jurisdictional provisions. (ECF Doc. 9, pp. 9-11, citing to, *e.g.*, *Ajlani v. Chertoff*, 545 F.3d 229, 235 (2d Cir. 2008); *Khalil v. President, United States*, __ F.4th__, 2026 WL 111933 (3d Cir. Jan. 15, 2026)). And despite some split within this judicial district, *see Amaya-Velis v. Raycraft*, 2026 WL 100596, at *3 (N.D. Ohio Jan. 14, 2026), *contra Lopez v. Noem*, No. 3:26 CV 128, 2026 WL 395202, at *2-4 (N.D. Ohio Feb. 12, 2026), the Sixth Circuit has not yet changed its position. The Sixth Circuit recently stated that an alien petitioner

14

challenging their detention must do so in the district court in the first instance, and that the Sixth

Circuit is without jurisdiction to consider challenges to an alien's detention even where a

challenge to the alien's removal is pending before it. *See Perez v. Bondi*, 160 F.4th 710, 713 n.1

(6th Cir. 2025) ("while [Petitioner's] request for an emergency stay of removal . . . was pending

with our court . . . our court denied [Petitioner]'s emergency motion for release from detention,

finding that first-instance review of his challenge to detention lies within the district court's

jurisdiction, not the court of appeals.").

Herrera's challenge in his federal habeas petition is not directed to his removal

proceedings – it is axiomatic that habeas petitions are directed to the legality of the confinement

itself. This Court is vested with the power to issue the writ for all persons, including non-

citizens, who are "in custody in violation of the Constitution or laws or treaties of the United

States." 28 U.S.C. § 2241. Herrera is not challenging matters that would merge into any final

order of removal, nor is he asking this Court to decide matters related to his pending immigration

claims. Rather, Herrera challenges the legality of his confinement itself, a matter which this

Court has jurisdiction to decide. *Dornveil v. Noem*, No. 4:25-CV-1809, 2025 WL 2720786, at *3

(N.D. Ohio Sept. 24, 2025) (exercising jurisdiction over detention-based claims because they did

not challenge the petitioner's removal proceedings).

Next, Respondents assert that "Petitioner claims that this Court has jurisdiction under 8

U.S.C. § 1252(e)(2)." (ECF Doc. 9, p. 13, citing ECF Doc. 1, Pet., ¶ 8). Section 1252(e)(2), as

Respondents correctly note, states the limitations on this Court's review: whether Herrera is an

alien, whether he was ordered removed, and whether he has been lawfully admitted and such

status has not been terminated. (ECF Doc. 9, p. 13). And I agree with Respondents that those

three issues are not directly challenged by this petition. (*See id.*; *see also* ECF Doc. 1, ¶ 8). But

15

this Court has other avenues for its jurisdiction. In that same paragraph, Herrera asserts: "This Court has subject matter jurisdiction under 28 U.S.C. § 2243 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause). Under 8 U.S.C. § 1252(e)(2), this Court has habeas authority to determine whether Petitioner was ordered removed under 8 U.S.C. § 1225(b)(1)." (ECF Doc. 1, Pet., ¶ 8). Herrera's assertion of habeas authority under 1252(e)(2) does not invalidate the others which provide this Court with subject matter jurisdiction. Herrera challenges the lawfulness of his confinement, as is proper in habeas review, (*id.*, ¶¶ 14-16; 50-59) and this Court has jurisdiction to consider his petition.

I therefore recommend the District Court exercise jurisdiction over Herrera's federal habeas petition.

> **B.** **The deficiencies in Respondents' documents in support of Herrera's arrest and detention warrant remedy.**

Having established this Court's jurisdiction, I take the time now to address the deficiencies in Respondents' supporting documents and Petitioner's motion for sanctions (ECF Doc. 13).

In my initial order on January 21, 2026, I ordered Respondents to show cause and support the lawfulness of Herrera's custody (ECF Doc. 6); during the February 5, 2026 status conference, I questioned Respondents on the same matter and ordered them to supplement with documents to support Herrera's arrest and detention (non-document entry of Feb. 5, 2026); and still finding the submissions deficient, I again ordered Respondents to provide this Court with documents supporting Herrera's arrest and detention (non-document entry of Feb. 12, 2026). My order on February 12, 2026 specifically directed Respondents to provide supporting documentation with "detail as to the date of noncompliance [of Herrera's immigration appearances] or copies of the messages sent to Petitioner regarding that noncompliance and his violation of the terms of his

16

alternative to detention release." (*Id.*). The only document Respondents provided that gives any reasoning to Herrera's arrest is an unsworn declaration from an ICE agent that states "[t]he Petitioner was taken into custody by ICE after he failed to report for his scheduled check-in and failed to respond to the message he was sent regarding his missed check-in. By failing to report and respond to the message, the petitioner violated the terms of the Alternative to Detention (ATD) he was released under." (ECF Docs. 11-3, 12-1 (duplicate), ¶¶ 5-6). Respondents never swore to the contents of this statement, have not given the date Herrera purportedly failed to appear as required, and have not given a copy of the reminder message sent to him. Respondents have not even given any arresting documents. By his account, Herrera was simply arrested and imprisoned, without warning and without prior violation. (ECF Doc. 1, Pet., ¶¶ 2,[9] 30). Herrera's arrest occurred as he was attempting to comply with the requirements of his release, as the government itself asks of him. (*Id.*). Because Respondents cannot support their version of events, Herrera has moved for sanctions. (ECF Doc. 13).

At this stage, I construe the facts in Herrera's favor. Without Respondents providing a sworn statement at minimum, or other contemporaneous documentation of Herrera's noncompliance with the conditions of his ATD, or other circumstances supporting his arrest and detention, Herrera's version of events has the right of it. Moreover, unlike Respondents, he has provided a sworn statement of the circumstances of his arrest. (ECF Doc. 13-2). I also note that in his affidavit, Herrera asserts that Respondents have within their custody a purported order for his arrest, certain of Herrera's immigration paperwork, and his phone containing an app with record of his appointment and messages. (*Id.*). Despite being within Respondents' control, none of this has been presented to the court.

---

[9] The petition states both August 15 and December 15, 2025 as the date of Herrera's arrest. (ECF Doc. 1, Pet., ¶¶ 2, 30). The parties confirmed that the correct date of his arrest was December 15, 2025.

I therefore accept as true that Herrera was trying to submit to an immigration appointment when he was arrested and placed into custody. Because I have construed the facts as favorable to Petitioner and find that he was compliant with appointments as scheduled, Respondents' unsworn declaration has no adverse impact on Herrera. I therefore deny the motion for sanctions (ECF Doc. 13) as moot.

But simply construing the facts in Herrera's favor is small remedy. At bottom, the writ centers on the lawfulness of a person's imprisonment and prevents a person from being detained in violation of the Constitution and laws of the United States. 28 U.S.C. § 2241(c)(3). And as is discussed in greater detail later, those same Constitutional protections "prevent[] the government from engaging in conduct that 'shocks the conscience' or interferes with rights 'implicit in the concept of ordered liberty.'" *Rosales-Garcia v. Holl*and, 322 F.3d 386, 410-11 (6th Cir. 2003), quoting *United States v. Salerno,* 481 U.S. 739, 746 (1987). And the concept of the government taking any person into custody without warning, reason, or *any* documentation to support their arrest is abhorrent to the Constitution.

Our immigration laws do not supersede the Constitution's protection of a person's liberty interest. *See Zadvydas*, 533 U.S. at 690. Rather, immigration proceedings are civil, not criminal, and there is no "special justification" to allow for detention simply on the basis of that person's status as an alien. *Id.* As the Court has stated, an alien's Constitutional liberty interest is not diminished by their lack of a legal right to "live at large" in the United States while their immigration proceedings are pending. *Id.* at 696 (internal marks omitted); *see also e.g.*, 8 U.S.C. §§ 1225(b)(2)(A); 1226(a); (c) (describing certain permissible detention provisions within immigration law). Rather, due process protects the alien's liberty interest in remaining in the

United States with "supervision under release conditions that may not be violated." *Zadvydas*, 533 U.S. at 696.

And here, the government has violated its own Constitutional principles by arresting and detaining Herrera without substantiating a reason, despite Herrera's compliance with release conditions. And despite the statement to Herrera that there was an order for his arrest (ECF Doc. 13-2, Herrera Aff., ¶ 7), Respondents have produced no such order. This is a grave error and warrants remedy equal to its weight. That the government cannot arrest and detain individuals, notwithstanding immigration status, without proper support and documentation, is fundamental to our Constitutional order. Favorable construction, sanctions, nor discretionary bond proceedings cannot provide sufficient remedy if the error occurred, as here, by an unlawful arrest.

For reasons discussed in greater detail throughout this Report and Recommendation, I recommend the District Court grant the writ and order Herrera's immediate release.

### C.     Administrative exhaustion is not required here.

Respondents argue that Herrera must exhaust his administrative remedies before seeking habeas relief. (ECF Doc. 9, pp. 13-14). Respondents assert that, since the IJ issued an order denying release on January 22, 2026, that the appropriate remedy is for him to appeal that decision with the BIA, not here. (*Id.* at p. 14; ECF Doc. 9-5).

No applicable statute requires administrative exhaustion here; the decision is left to this Court's discretion. "When Congress has not clearly required exhaustion, sound judicial discretion governs whether or not exhaustion should be required." *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (internal quotation and marks omitted). The Sixth Circuit has not yet determined whether administrative exhaustion should be required in the context of a noncitizen's

habeas petition challenging the administration's policy of mandatory detention. *Gil Pirona v. Noem*, No. 1:25-CV-1571, 2025 WL 3687339, at *2 (W.D. Mich. Dec. 19, 2025). Courts within the Sixth Circuit have applied the following test to determine whether prudential exhaustion should apply:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Mendoza v. Raycraft*, No. 4:25CV2183, 2025 WL 3157796, at *9 (N.D. Ohio Nov. 12, 2025), quoting *Puga v. Cherthoff*, 488 F.3d 812, 815 (9th Cir. 2007).

Applied to Herrera's case, these factors weigh against requiring Herrera exhaust his administrative remedies before review in this Court.

As discussed above, a habeas petition in a federal district court is distinct from that petitioner's proceedings in immigration court. Because a habeas petition challenges the lawfulness of the petitioner's confinement, it does not reach questions regarding the petitioner's immigration proceedings and therefore does not require agency consideration to generate a record on which it might reach its decision. *See Zadvydas*, 533 U.S. at 687-88 (describing that habeas petitions challenge an alien's custody and do not reach questions within the province of the administrative agency). With this petition, Herrera challenges the lawfulness of his custody, not the immigration court's determinations in his removal proceedings. *See* 28 U.S.C. 2241. And the record here is complete for purposes of that consideration. (ECF Docs. 1, 9-13 *and attachments*). Herrera affirms that he was compliant with the conditions imposed on him by immigration authorities until he was suddenly detained while in the act of complying with those

requirements. (*E.g.*, ECF Doc. 13-2). The materials submitted by Respondents do not refute Herrera's version of events.

Herrera's petition asserts legal claims directed to his confinement and development of the record in Herrera's immigration case is not required for this Court to reach its decision on his habeas petition – and such development would be imprudent and unnecessarily muddy the waters between Herrera's removal proceedings in immigration court and his habeas proceedings here. The first factor is not met.

The same reasoning applies for the second factor. A habeas petition under these conditions serves a distinct purpose and is not intended to bypass the administrative scheme of Herrera's removal proceedings. The question of Herrera's removal is not at issue here; the question before this Court is whether he is lawfully detained or whether he has received due process for that detention. If his arrest and detention is improper, and if the policy described in *Yajure Hurtado* is improperly applied to him, then appeal of the January 22, 2026 bond hearing to the BIA will not cure the error. These questions fall squarely for federal courts to determine, not administrative agencies, and thus is not addressed within the administrative scheme. *See Zadvydas*, 533 U.S. at 692 (stating, "the Constitution may well preclude granting an administrative body the unreviewable authority to make determinations implicating fundamental rights." (internal quotations and marks omitted)). A habeas petition arises from separate rights under the Constitution and does not bypass the administrative scheme. Therefore, the second factor is not met.

The third factor is also not met. Certainly, where administrative channels are available, a habeas petitioner should first attempt those channels before seeking relief in the district court. And if Herrera had been lawfully detained, given a discretionary bond hearing under § 1226 and

been denied on the merits of that claim, then certainly, he should have to seek appeal before the BIA before challenging the lawfulness of his detention here.

But that is not what has occurred. Herrera has asserted that he was arrested without warning and despite compliance with the conditions of his ATD. (ECF Doc. 13-2). And Respondents' present conduct has not shown that they will correct their own mistakes when afforded the opportunity. Despite repeated directives for Respondents to provide support for Herrera's initial arrest and detention on December 15, 2025, Respondents did not do so. (*Compare generally Docket with* ECF Docs. 11, 12 *and attachments*). Even though these documents are within Respondents' control – and documents should be available to the government for any arrest it makes – they provide no more than an unsworn declaration, without even a date provided for their assertion of Herrera's noncompliance. (*See id.*). Agency error occurred at the moment of Herrera's unlawful arrest, and requiring Herrera to appeal his bond denial to the BIA will  not result in the agency correcting its mistakes.

Also at issue here is whether or not the correct law – and consequently, the correct detention scheme – is applied to Herrera, and the due process protections attendant on that application. Herrera asserts that even were his arrest and detention lawful, he is subject to discretionary bond under Section 1226(a). But as Respondents continually assert, and as the IJ determined at Herrera's bond hearing, Herrera is subject to mandatory detention under Section 1225(b)(2)(A) and the IJs are without jurisdiction to consider otherwise. (ECF Docs. 9, pp. 16-23; ECF Doc. 9-5). Therefore, appeal of his bond proceedings is not likely to result in the agency correcting its mistakes where the error lies in the agency's application of law. This is particularly apparent where the agency has not corrected its errors in these proceedings.

Other Courts within this judicial district have also looked to the futility of requiring a petitioner to exhaust to the very agency enforcing the erroneous directive. *Lopez v. Noem*, No. 3:26 CV 128, 2026 WL 395202, at *6 (N.D. Ohio Feb. 12, 2026) ("The Petition is just one—of what the Court can only estimate are thousands—of petitions seeking analogous relief because of BIA's and ICE's recent interpretative shift. . . . This Court cannot think of anything more clearly amounting to a 'futile gesture' than requiring Petitioner to spend time appealing the Immigration Court's decision to deny her a bond hearing to the very agency that passed down that unequivocal directive."). In the past months since *Yajure Hurtado* was decided, the agency has presented its "clearly stated position" and predetermined the result; exhaustion would be futile. *E.g.*, *Contreras-Lomeli v. Raycraft,* No. 2:25-CV-12826, 2025 WL 2976739, at *4 (E.D. Mich. Oct. 21, 2025). Requiring Herrera to exhaust to the very agency that has ignored the same directive in hundreds of district court cases is a futility.

The third factor is not met here.

I therefore recommend the District Court not require prudential exhaustion and consider the merits of Herrera's petition.

**D.      Section 1225(b)(2)(A) does not apply to Herrera.**

I turn to whether § 1225(b)(2)(A) or § 1226(a) applies to Herrera, and whether the Government may now apply *Matter of Yajure Hurtado* in his case to divest the immigration courts of jurisdiction to consider discretionary detention.

In the months since *Matter of Yajure Hurtado* was decided, an overwhelming number of habeas petitions have surged in district courts across the country. By last count, over 1,000 district court decisions have been issued, with more than 200 of them issuing from courts within the Sixth Circuit. *Matter of Yajure Hurtado citing references*, Westlaw (filtered by jurisdiction)

(last accessed Jan. 28, 2026). Overwhelmingly, courts across the country, including the Seventh

Circuit and numerous district courts within the Sixth Circuit, have disagreed with the agency's

interpretation of Section 1225(b)(2)(A)'s mandatory detention scheme to apply to all immigrants

who have applied for admission but have not reached a final determination on the merits. *See id.*;

*see also Castanon-Nova v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025).

The courts agreeing with Respondents' interpretation of the statutory text are in the minority, and

the only circuit court to agree at the time of this writing, is not binding here. *See Buenrostro-*

*Mendez v. Bondi*, No. 25-20496, 2026 WL 323330, at *4 (5th Cir. Feb. 6, 2026).

The district courts in the Sixth Circuit have provided thorough discussion of the

principles of statutory interpretation, the statutory scheme of each section, Congressional intent,

and the ways in which the Government's proposed interpretation is inappropriate. *See, e.g.*, *Gil*

*Pirona*, 2025 WL 3687339, at *3-*6 (W.D. Mich. Dec. 19, 2025); *Pizarro Reyes v. Raycraft*, No.

25-CV-12546, 2025 WL 2609425, (E.D. Mich. Sept. 9, 2025) *and Singh v. Lewis*, No. 4:25-CV-

96-RGJ, 2025 WL 2699219, (W.D. Ky. Sept. 22, 2025). A recent decision within this District

found the same. *See Lopez-Lopez*, 2026 WL 395202, *7 (describing at least 350 decisions as of

November 26, 2025, and agreeing that the "clear majority" favors similar petitioners' statutory

interpretation). I agree with these courts' interpretation of the statutory text. In the interest of

judicial economy, I follow *Singh* in incorporating their reasoning by reference. *Singh*, 25 WL

2699219, at *3.

I now turn to which statute is appropriately applied to Herrera. Herrera alleges that even

though he initially crossed the southern border without presenting for inspection, the next day, he

presented for inspection by immigration authorities and was paroled into the United States. (ECF

Docs. 1, Pet., ¶¶ 27, 42, 1-4 (stating he entered on June 11, 2022 at 21:30 hours and was paroled

24

into the United States on June 12, 2022); *see also* ECF Doc. 10, pp. 2-4). Because of this, Herrera asserts he is no longer an "arriving alien" under the statute – he was lawfully living within the United States, had work authorization, and was pursuing his asylum claim, making 8 U.S.C. § 1226(a) applicable to him. (*Id.*; *see also, e.g.*, Pet. ¶¶ 28, 34, 36, 40-42).

The Government's arguments that 1225(b)(2) now applies to Herrera do not hold weight. In essence, Respondents state that because Herrera has not yet been conferred status, he continues to be an "arriving alien" for as long as his immigration case is pending, because he has not yet been "admitted," and parole does not qualify as admission.[10] (ECF Doc. 9, pp. 16-23). But Respondents' arguments for applying 1225(b)(2)(A) against Herrera are not well taken. (*See id.*).

As Respondents correctly state, "*Jennings* found that 8 U.S.C. § 1225(b) 'applies primarily to aliens seeking entry into the United States ('applicants for admission' in the language of the statute).'" (ECF Doc. 9, p. 20, quoting *Jennings*, 583 U.S. at 297). Respondents also argue,

> Section 1225(a) defines "applicant for admission" to encompass an alien who either "arrives in the United States" or who is "present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). And "admission" under the INA means not physical entry, but *lawful entry after inspection by immigration authorities.* 8 U.S.C. § 1101(a)(13)(A); *Mejia Olalde v. Noem*, 2025 WL 3131942, at *3 (E.D. Mo. Nov. 10, 2025).

---

[10] Respondents also argue that DHS has the sole discretion to authorize release from detention under 8 U.S.C. § 1225(b) and permit humanitarian parole under 8 U.S.C. 1182(d)(5). (ECF Doc. 9, p. 23). Respondents also caution that "[p]arole is not a bond hearing, and the two should not be conflated." (*Id.*). I agree that parole and release on bond are distinct issues. However, other courts within this Circuit have found that improper revocation of humanitarian parole violates a habeas petitioner's due process and counsels immediate release. *E.g.*, *Pernia v. Raycraft*, No. 1:26-CV-35, 2026 WL 279323, at *5 (W.D. Mich. Feb. 3, 2026). Therefore, humanitarian parole (and any revocation) may be relevant to this Court's consideration of a habeas petition. Furthermore, as I later conclude, § 1225(b) does not apply to Herrrera, and the attendant parole provisions thereunder no longer apply. Respondents' arguments regarding parole are therefore inapposite.

(ECF Doc. 9, p. 21) (emphasis added). Respondents continue that, according to Agency interpretation, "'many people who are not *actually* requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be "seeking admission" under the immigration laws.'" (*Id.* at p. 22, quoting *Matter of Lemus-Losa*, 25 I & N. Dec. 734, 743 (BIA 2012)).

But this Court is not bound by Agency interpretation or Respondents' policy preference. *Loper Bright*, 603 U.S. at 403; (*C.f.* ECF Doc. 9, p. 22 ("To be sure, the Government previously operated under a different understanding of Section 1225(b)(2)(A), such that aliens present in the United States who had entered without admission instead were detained under Section 1226(a).").). And previous Agency interpretation has the right of it. Herrera was not present in the United States without permission. (*E.g.*, ECF Doc. 1-4). Herrera was granted entry into the United States by a CBP officer, after presenting for inspection and successful completion of an interview. (*Id.*).

Section 1225(a) states that "an applicant for admission" – someone who "has not been admitted or who arrives in the United States," is required to be inspected by an immigration officer, describe their purposes for seeking admission, and whether they are otherwise inadmissible. 8 U.S.C. §§ 1225(a)(1),(3),(5). Section 1225(b)(2)(A), which Respondents now seek to apply against Herrera, states that "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained. . . ." On this basis, Respondents have detained Herrera and assert that IJs are without jurisdiction to consider discretionary bond. (*E.g.*, ECF Docs. 9, 11, 12).

But here, Herrera has submitted for inspection to an immigration officer, was paroled into the United States, and timely applied for asylum. (ECF Doc. 1, Pet., ¶¶ 27-28). He complied with

all requirements asked of him until he was detained – arguably, detained while complying with those very requirements. (*E.g.*, *id.*, ¶¶ 27, 30). As such, his entry into the United States was done after inspection by an immigration officer, and was lawful. (ECF Doc. 1-4). Thus, by Respondents' own arguments, Section 1225 no longer applies to him.

This Court and others have rejected the notion that *Thuraissigiam*'s statement "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border," 591 U.S. at 139, extends to treating all aliens as continually "arriving" when applying § 1225(b)(2)(A) against them. *E.V. v. Raycraft*, No. 4:25-CV-2069, 2025 WL 2938594, at *3 (N.D. Ohio Oct. 16, 2025), citing *Coal. for Humane Immigrant Rights v. Noem*, No. 1:25-cv-00872-JMC, 2025 WL 2192986, at *3 (D.D.C. Aug. 1, 2025), *appeal pending* 25-5289 (D.C. Cir. Aug. 11, 2025)); *see also Make the Rd. New York v. Noem*, No. 25-CV-190 (JMC), 2025 WL 2494908, *12 n.15 (D.D.C. Aug. 29, 2025). Those cases look to the plain meaning of the term "arrive" to determine the label of "arriving alien" is inapplicable to someone who previously reached a port of entry, underwent inspection, and then was paroled into the country. *E.V.*, 2025 WL 2938594, at *3. As this Court has stated, "'the only way to make sense of the statutory scheme Congress created is to see that parolees fall under neither [provision of Section 1225(b)(1)]. Any other result conflicts with other aspects of the statute and regulations, Congress's evident purpose, and the ordinary meaning of the statute's words.'" *Id.*, quoting *Coalition*, 2025 WL 2192986, at *39.

Furthermore, Herrera's case is easily distinguished from the reasoning in *Thuraissigiam*: he was permitted into the United States after presenting to immigration authorities, where he was released into the United States on parole under standard removal proceedings to seek asylum more formally, which he has since done. It is a "settled proposition that noncitizens on the

threshold of initial entry stand on a different footing than those who have passed through our gates." *Make the Rd. New York v. Noem*, No. 25-CV-190 (JMC), 2025 WL 2494908, at *11 (D.D.C. Aug. 29, 2025). Because Herrera entered the United States and was granted parole under Section 1182(d)(5), he is not subject to the expedited removal or detention provisions described in Section 1225; he must be afforded process according to Section 1226(a). (ECF Doc. 1-4; *see also Gil Pirona*, 2025 WL 3687339, at *4 (W.D. Mich. Dec. 19, 2025)).

District courts in the Sixth Circuit and across the country agree in the application of Section 1226(a) in cases like Herrera's, including *Pizarro Reyes*, 2025 WL 2609425, at *7-9 (holding that the text, legislative history, and agency guidance support the argument that § 1226, not § 1225 applies); *Lopez-Campos*, *v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379 ("the Court finds that Lopez-Campos is not subject to the provisions of Section 1225(b)(2)(A). Rather, he clearly falls under the provision of Section 1226(a), and is subject to the discretionary bond determination outline therein."); *Kozubaev v. Lynch*, No. 1:25-CV-1873, 2026 WL 116797, at *2 (W.D. Mich. Jan. 15, 2026) ("The Court concludes that § 1226(a), not § 1225(b)(2)(A), governs noncitizens, such as Petitioner, who have resided in the United States and were already within the United States when apprehended and arrested . . . .") (collecting cases); *Baabekov v. Raycraft*, No. 1:26-CV-37, 2026 WL 183515, at *2 (W.D. Mich. Jan. 23, 2026) (same).

The Government may not now make a redetermination and reinterpret the statute against Herrera, particularly where it has done so without affording him due process, as I discuss next.

I therefore determine Section 1226(a) is properly applicable to Herrera.[11]

---

[11] With this determination, I find it unnecessary to consider whether Herrera is a member of the Bond Eligible Class in *Bautista* and decline to apply it here. (ECF Doc. 1, ¶¶ 1-10; *see also Bautista v. Santacruz,* No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d ----, 2025 WL 3289861, at *11 (C.D. Cal. Nov. 20, 2025) (order granting partial summary judgment to named Plaintiffs-Petitioners); *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d ----, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025)). As discussed herein, Herrera is entitled to, at

E.    **Herrera's continued detention violates his Due Process and Equal Protection rights and counsels granting the writ.**

Having determined that Section 1226(a) applies to Herrera, I turn to whether his detention without discretionary bond denies him due process.

The Due Process Clause extends to all persons regardless of status, including non-citizens. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025); *Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886). "[O]nce an alien enters the country . . . the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Herrera is thus still afforded constitutional protections regardless of his immigration status.

1.    **Substantive Due Process**

As a general matter, substantive due process protects individuals from arbitrary government action that infringes on their fundamental rights, including the right to liberty. *Rosales-Garcia v. Holland*, 322 F.3d 386, 408 (6th Cir. 2003). In the immigration context, "an alien's status as removable is alone insufficient to outweigh his constitutionally protected liberty interest." *Id*. "[S]ubstantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746 (1987) (internal quotations and marks omitted).

And here the government has engaged in conduct that offends the concept of ordered liberty. Herrera is detained without explanation. No arresting documents have been provided, no violation of his ATD is subustantiated, nor have Respondents given support for Herrera's arrest and detention on December 15, 2025. Such action by the government does not merely "interfere"

_____

minimum, consideration for release on bond under 8 U.S.C. § 1226(a) – the same relief he requests as a putative member of that class. (ECF Doc. 1, ¶¶ 26-31). But given the errors present at the inception of Herrera's arrest and detention, putative class membership, and simple discretionary bond under 1226(a) is insufficient relief.

with "implicit" liberty rights. *Id.* Liberty itself – for Herrera or for any other person in the United States – is extinguished if the government is permitted to detain a person without cause. In itself, this is an unconstitutional act and requires immediate remedy.

### 2. Procedural Due Process

Procedural due process requires the government provide adequate safeguards to ensure against arbitrary deprivation of an individual's liberty interest, including the ability to challenge the basis for detention. *See Lopez-Campos*, 2025 WL 2496379, at \*10. It is permissible for immigrants to be detained pending their removal proceedings, even under a mandatory detention structure. *See Demore v. Kim*, 538 U.S. 510, 531 (2003) (upholding the constitutionality of mandatory detention under Section 1226(c) for certain criminal aliens during removal proceedings, where such detention is brief and serves the legitimate government purposes of ensuring the alien's presence at removal hearings and protecting the public from potential harm). Thus, the BIA's decision in *Matter of Yajure Hurtado* does not violate an alien's due process rights in the abstract. *See, e.g.*, *Azalyar v. Raycraft*, No. 1:25-CV-916, 2026 WL 30741, at \*4 (S.D. Ohio Jan. 2, 2026). With respect to procedural due process, the issue before this Court is "whether those policies have been applied in an unconstitutional manner." *Id.* (internal quotations and marks omitted).

When considering Herrera's continued detention, he has been afforded some minimal process – but that process itself was erroneously based on the wrong statute. (ECF Docs. 9-5, 11, 12). When given a bond hearing – after filing his present petition – the IJ denied bond as without jurisdiction, *i.e.*, the IJ believed they were bound by the mandatory detention scheme of Section 1225(b)(2)(A). (*See* ECF Doc. 9-5). Yet Respondents' own arguments here point to a misapplication of these same statutory provisions in Herrera's case. He was initially granted

permission to remain in the United States, applied for asylum, and was granted parole. (ECF Docs. 1-4, 1-5, 1-6, 1-7). For Herrera's bond proceedings to comply with procedural due process, they must be made under 1226(a)'s discretionary scheme. Therefore, the blanket application of Section 1225(b)(2)(A)'s mandatory detention against Herrera where Section 1226(a)'s discretionary detention provisions should apply does create a due process violation.

To determine the adequacy of process in the context of civil immigration detention, the Court must weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see also United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020) (applying the *Mathews* test).

### a.      Private interest

It is undisputed that Herrera has a significant private interest in not being detained. Indeed, freedom from detention is one of the "most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. And to be arrested and detained without the government first establishing proper process infringes on Herrera's constitutional rights while his immigration proceedings are being decided. *See Singh*, 2025 WL 2699219, at *4 (finding the first *Mathews* factor favored petitioner where continued detention infringed on his liberty interest). This factor favors Herrera.

31

b.        **Risk of Error**

The second *Mathews* factor also favors Herrera, because, as above, he has been held in mandatory detention through a misapplication of Section 1225(b)(2)(A)'s mandatory detention provisions against him. And "when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it." *Loper Bright*, 603 U.S. at 413. Other district courts confronted with similar issues as are present here have determined that there is a significant risk of error in the misapplication of these provisions, particularly where, as here, the petitioner has a pending asylum claim. *Make the Rd. New York*, 2025 WL 2494908, at *14-18.

In Herrera's case, immigration officials, vested with authority delegated by Congress to the Attorney General and DHS, granted Herrera humanitarian parole and lawful entry into the United States after inspection. (ECF Doc. 1-4). That parole may be revoked and require Herrera to leave the United States and thereafter seek entry anew. *See* 8 U.S.C. § 1182(d)(5)(A). But the government may not retroactively choose to revoke the lawfulness of his entry and withdraw the discretionary bond procedures provided under 1226(a) to people who have been granted lawful entry. *See Jennings*, 583 U.S. at 303 ("As noted, § 1226 applies to aliens already present in the United States."). The unilateral decision by the BIA to use *Matter of Yajure Hurtado* to extend a different statute to Herrera's circumstances despite Supreme Court precedent stating otherwise now leaves his liberty interest at risk. The Government Respondents may not now extend the bounds of their authority to apply Section 1225(b)(2)(A) against him, and this Court must ensure proper application of the laws against Herrera.

This misapplication may also have an adverse effect on Herrera's removal proceedings, because "noncitizens cannot be in two parallel paths of removal proceedings." *Sanchez*

*Ballestros v. Noem*, No. 3:25-CV-594-RGJ, 2025 WL 2880831, at *3 (W.D. Ky. Oct. 9, 2025). If an alien is first placed in full removal proceedings, they cannot later be subjected to expedited removal under Section 1225(b)(1). *Id.* (collecting cases).

Even so, the issue of erroneous application of 1225(b)(2)(A) against Herrera is secondary here. As has been discussed exhaustively throughout this Report and Recommendation, Herrera has a liberty interest in remaining in the United States under his ATD conditions, as long as he is compliant with those conditions. *See Zadvydas*, 533 U.S. at 696. And on balance, the evidence demonstrates that Herrera was complaint with his ATD conditions, and the government acted against him. (*Compare, e.g.*, ECF Doc. 13-2 *with* ECF Docs. 11-3, 12-1). Error here has already occurred, and continues for as long as Herrera is detained.

### c. The United States' Interest

The final *Mathews* factor concerns the United States' interest in the proceedings, as well as any financial or administrative burdens associated with permissible alternatives. *Matthews*, 424 U.S. at 335. In making this consideration, I recognize that the United States has an interest in meaningful immigration laws that advance its stated policies. I cannot, however, countenance the Government Respondents' position that Herrera is now subject to Section 1225(b)(2)(A), may also be subject to expedited removal under that Section, and is subject to continued detention when his arrest and detention was in error from the start. The United States has an interest in consistent application of its laws and ensuring that those laws are applied under the proper means. And Respondents, speaking for one branch of government, may not choose unilaterally whether and how to apply duly enacted laws. *See Lopez-Campos*, 2025 WL 2496379, at *10.

Nor have Respondents shown that it would be burdensome to apply Section 1226(a) in cases like Herrera's. That statute permits for an alien's arrest and detention pending the removal

decision. 8 U.S.C. § 1226(a)(1) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."). Proper application of Section 1226 affords Herrera only the fundamental constitutional right to due process given to all persons within the United States, whether their presence here is lawful, unlawful, temporary, or permanent. *Zadvydas*, 533 U.S. at 693. Therefore, the final factor also weighs in Herrera's favor.

For all of these reasons, I find that Respondents have not substantiated Herrera's initial arrest and detention, and have further compounded the error by misapplying Section 1225(b)(2)(A)'s mandatory detention requirement against him. Accordingly, and because Respondents have not provided valid documents supporting his initial detention, I recommend that Herrera be afforded immediate release.

## V.     Conclusion and Recommendation

Because Section 1225(b)(2)(A) is inapplicable to Petitioner, Respondents may not now impose mandatory detention against him pending his removal decision under Section 1225(b)(2)(A) and *Matter of Yajure Hurtado*. I further find that Respondents have not sufficiently supported the lawfulness of Herrera's initial detention, nor does statutory interpretation or court precedent counsel his detention. I therefore recommend the District Court grant the writ as to Petitioner and order his immediate release.

Dated: February 27, 2026

Reuben J. Sheperd
United States Magistrate Judge

---

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

\* \* \*

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entire report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, \*2 (W.D. Ky. June 15, 2018) quoting *Howard*. The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).